The first case today is No. 181602, G. et al. v. The Fay School et al. Thank you. Good morning, Your Honors. I'm John Markham for the appellant. May I please reserve two minutes of court rebuttal? Yes. Thank you. May it please the Court. This case raises various issues having to do with a claim of ABA discrimination brought by a young student and his family. The record shows that the family brought respectfully to the attention of a very costly private school that their relatives and sons and daughters had been attending for many years a reasonable request to talk to the school about a concern that their son was sensitive to Wi-Fi and was there anything the school could do about it. We respectfully submit that the record shows that the school stonewalled the family, was derisive, joked behind the family's back about this idea that Wi-Fi could make some people have serious symptoms, that some people were a symptom to it, that this was a clog wash, that this was made up, and that they should be ignored, they should be kept at bay, and many other derisive comments, which the court below characterized as evidence of retaliation. The court went on to hold that there was no damages for retaliation, and they were correct that by the time the court got around to ruling below, it was too late for injunctive relief on retaliation. Counsel, could I ask you, there's an issue in this case about the district court's decision to exclude your specific causation expert. I'm trying to understand why that issue still matters at all, given that your ADA claim is now moot, leaving you with misrepresentation, breach of contact, and retaliation claims. Why is that exclusionary rule by the district court still relevant at all? If this court resuscitates either a breach of contract claim or a misrepresentation claim, such that we would get a trial on either of those, part of the proof would be that, in fact, the young boy did have a sensitivity. We could not get through a trial on either misrepresentation or breach of contract without the other side saying, well, he didn't have that. It seems to me your retaliation claim, breach of contract, misrepresentation, they're all about how the school responded to your concerns about the child. They don't have anything to do with whether he, in fact, had the condition. The specific causation ruling has to do with whether he had the condition. I don't see why, if those claims were resuscitated, that ruling has anything to do with your claim for damages. On retaliation, it certainly doesn't, because retaliation is simply a reaction to a good faith claim, even if the claim has no merit. It's the reaction. With respect to the breach of contract claims and the misrepresentation claims, if the court below were to rule that whether or not my client, the young boy, had EHS that was caused by the Y-5, was not material and couldn't be raised by them, then obviously we wouldn't need to raise it. The question would be, we came to them with this claim and they didn't treat us as they promised they would in the handbook. But if, as I suspect, and as we think would be appropriate, unless there was a bar by the court below at a trial, if they're allowed to say, well, he didn't have it and we had a good faith basis for believing he didn't have it, and he didn't have it, and it's all made up, then we should be able to have a doctor say, this is a substantial claim and this is why I think he had it. That's my argument. But if they can't do it, then obviously we wouldn't be able to do it either. Counsel, you've raised a pure issue of law as to whether damages are recoverable. Injunctive relief is now moot because the child has moved on beyond the range that the Fay School offers. And I understand you make a two-part argument. One is we're entitled to damages, compensatory and possibly punitive. And secondly, that you're entitled to nominal damages even if you don't get compensatory damages. So could you explain to me the basis for both of those arguments? Titles 1, 2, and 3 of the ADA prohibited certain conduct in certain settings. We're in Title 3. Your retaliation claim is Title 5, which refers to Title 3, which refers to the public accommodation claims, as to which this Court has already held that there are no compensatory or punitive damages available. Isn't that correct? It is correct. Our only argument on retaliation is that the ADA should be interpreted expansively and that Title 5 refers for damages for anybody who retaliates. But that would require us to reverse our prior ruling, wouldn't it? Well, I would submit that this is in a different setting because this is an accommodation under Title 3. And the reference in the provision says you're entitled to the remedies of various damage provisions respectively. I understand the governing provision to refer to prospective relief, and we've interpreted that to say no compensatory or punitive damages. So if there are no compensatory or punitive damages, how could there be nominal damages and how could that be prospective relief? If Your Honor is sick with preventative relief as being purely injunctive, that wipes them all out. Okay. Thank you. All right. I want to spend, if I can, some time on the contract provision, which the Court said was purely aspirational. And if you take a look at the contract provision in the handbook, the provision does say some things that are aspirational. We will inspire everybody to work together and to be helpful and that type of thing. But there is one provision in the, for example, it says, which is aspirational, quote, we expect all members of the community to respect the rights of others. That's an expectation, not a promise. However, at page 7 of our brief, we cite a very specific promise. FAE affords its students all rights, privileges, programs, and activities generally accorded or made available to students. That is a promise. And if somebody comes who is a student at FAE and they say, I'm having a problem, I'm having nosebleeds, chest palpitations, headaches, I'm having trouble concentrating at school, and they act the way that FAE acted, we respectfully submit that that is a violation of a specific contract provision that ought to be sanctioned under contract law. It is odd that the Court said that those provisions were satisfactory for misrepresentation, but they weren't satisfactory for contract. An aspirational representation is not specific. My time is up. May it please the Court. Good morning. My name is Sarah Schwartz. I'm here on behalf of the FAE School and Mr. Gustafson. With me is my colleague, Mr. DeProspo. I wanted to follow up quickly on the excellent question that Judge Lopez asked, which has to do with where we are on the question of Jones v. Walgreen, essentially. In fact, my colleague, Mr. Markham, here, has already conceded not once, not twice, but actually four times, that, in fact, Dr. Hubbock should be excluded, and that's actually what I'd like to start with. Let's go back as far as the trial court in his opposition to his motion to eliminate or preclude experts. He explained that Dr. Hubbock was only relevant with respect to the ADA claim. Similarly, he then moved to reconsider, seeking to open a trial on the damages issues. He did not seek to reconsider Dr. Hubbock. So clearly, he did not believe he needed Dr. Hubbock on damages of any sort. Those are the first two concessions. In his initial opening brief in this court, Mr. Markham says that if the court allows the contract and misrepresentation claims to go forward, this would not require a trial on a specific causation. So he agrees with that. And he repeats that as well in his reply brief. So I did want to point out the concessions on that. The next point I'd like to make is Mr. Markham starts by saying this is an ADA discrimination case. It's actually not. Those claims are completely gone, as you have all recognized already. This is not a case about a boy who has a sensitivity to Wi-Fi anymore. In fact, the plaintiffs completely, utterly failed to prove either that he had a sensitivity to Wi-Fi or that it was caused by phased Wi-Fi. Both parts of that they never proved. They visited numerous doctors. They only found one who identified any, quote-unquote, medical certainty that, in fact, he suffered from this. And that was Dr. Huggock, who was excluded for very good reasons by the trial court. So all that remains now is the retaliation claim, the breach of contract claim, and the misrepresentation claim. None of these have anything to do with whether this boy has a disability, as Judge Lopez pointed out. So to go back to the question that Judge Lynch asked about retaliation, it is very clear under W. E. Hannaford that there is only prospective relief. So I don't believe that the court should be revisiting that issue. That has been made quite clear. And with respect to a nominal damages question, he's conceded if there are no compensatory or punitive, there are no nominal damages, which is an appropriate concession. Thank you. Thank you, Judge Lynch. So that leaves us then with his theory that he somehow should be able to have you all rule that Dr. Huggock should be admitted to submit non-expert testimony, which is a bit of an end run. And I would point you, in fact, to the case that Judge Howard authored, United States v. Valdivia, in 2012, in which he specifically talks about how you cannot submit an expert for non-expert testimony as an end run around the federal event in 702. I'd be happy to brief that if you need us to. We'd be pleased to do so in a cert reply or a 28-J. But I do want to point out that he is not entitled to have this court rule on the admissibility of Dr. Huggock other than as an expert. Maybe I missed his argument, Counsel. You're saying he can speak for himself, but he was suggesting that there would be a basis for Dr. Huggock's testimony as a non-expert witness. Did you elaborate on that? I'm not sure I understood that point. Thank you, Judge Lopez. He does make that point in his briefs. In fact, he made it at the trial court level as well, which is, okay, you won't let her in as an expert, but she can still testify on all these non-expert issues. And in fact, my point to this court is... Such as? Well, that's a great question, actually, Judge Lopez, because all she's been submitted to speak on is specific causation. And as you correctly pointed out to Mr. Markham, that's her sole purpose. She doesn't have knowledge about how the school acted with respect to the breach of contract or misrepresentation claims or even the retaliation claim. So my point is only that I think that the plaintiff's argument with respect to submitting Dr. Huggock as a non-expert should be discarded, and it's technically not before this court. The only question before this court is whether to resuscitate her as an expert in this matter. Well, the logic of your argument is the only issues remaining for us are the breach of contract claim and the misrepresentation claim, and perhaps you'd spend some time on that. Thank you, Judge Lynch. I'd be happy to. So with respect to the breach of contract claim, the first point I would simply make is that the plaintiff relies solely on a few excerpts of the handbook. And in fact, this morning Mr. Markham said he was relying on some very specific language, which is truly aspirational. There is no promise implied in the language that Mr. Markham recited. I would focus you on the Nungesser v. Columbia case, which is the so-called mattress project case, and point out that the Southern District of New York has said a non-discrimination policy does not create the basis for a breach of contract claim. And that is the most recent case. It's 2017, Southern District of New York. The cases that the plaintiff cites are all really quite unrelated to this. He focuses on a Bowdoin case that's under Maine law and some other cases that do not in any way relate to the breach of contract in this context. With respect to the misrepresentation claim, the case that is most analogous here is by Judge Burroughs in the Federal District Court of Massachusetts, the Grant v. Target case. The question is, well, the holding in Grant v. Target is essentially that whether one acts in conformity with the policies is not the same as proof that you implemented the policies with knowledge of falsity. And that's the test here. The plaintiffs spend four pages discussing misrepresentation. They make one cite to the factual record, and that factual record is to a blog published by my law firm. It is not admissible in any way. They do not cite to a single fact. They have not played with particularity any of their misrepresentation claims, which Judge Saylor would say they should in the Robert Rieser case. They have not in any way supported that in their complaint or through discovery. In fact, the cases that Mr. Markham relies on for misrepresentation are actually helpful to the Fay School, to the Robert Rieser case, for example. The Judge Saylor case says specifically plaintiffs must state fraudulent circumstances for particularity. They haven't cited anything, four pages of advocacy without one cite to the record. Counsel, I guess your opponent made the point that there may be an inconsistency in the district court's opinion in the sense that it describes statements in the handbook as aspirational for purposes of the contract analysis, and yet for purposes of misrepresentation, it seemed to treat some of those same statements as assertions of fact, which are subject to misrepresentation. Try to go hard reconciling those two positions. I tend to agree with you, Judge Lopez. I think that I don't have complete clarity on why he did that. Judge Hellman's explanation of the misrepresentation parts of the handbook is somewhat inconsistent with his explanations of it in the breach of contract section. However, the result is the same because no matter how you interpret the handbook, there are no facts to show the misrepresentation, the falsity, the fraud. And so while I agree with you that there is a little bit of an irreconcilable difference, I think it is semantics because you end up in the same place given the utter lack of factual support for any of the misrepresentation claims. But I can't completely reconcile it. Thank you. In closing, I would simply like to say that this really is not an ADA discrimination case at all. We ask you to affirm the rulings below both with respect to Daubert and with respect to summary judgment. The legal precedents are clear from Dudley v. Hannaford on the ADA claims and the retaliation damages that may be available all the way through on breach of contract and misrepresentation. Thank you very much. The non-aspirational representation in the handbook was FAE affords all rights, privileges, programs, and activities generally accorded or made available to students, to all of the students. And it promises, affirmatively, non-discrimination. Those are not aspirational. They are affirmative representations that would induce a parent to bring a child there. My child will be treated no differently. I respectfully submit those are representations of a concrete nature. You know, I'm a little troubled by the notion that because a school says what it is required to say under federal and state law that it does not discriminate, that that somehow creates a new contractual relationship. What is the basis for that assertion? It's a representation that would induce people to come. It's a representation we intend to comply with the law. How does that create a contract? Your Honor, it goes beyond just discrimination. It says all rights, privileges, programs. Okay, so let's drop out the discrimination clause. What are we left with? FAE affords students all rights, privileges, programs, and activities generally afforded to other students. I respectfully submit that a parent looking for a school would say, Okay, my child is going to be treated, and if he has a problem, under that problem he will be treated as everybody else. They came, and this goes to why Dr. Hoverick is relevant for non-expert purposes. I'm sorry, you may have waived all of those arguments. Your sister got up and recited to four instances in the record in which you said more or less that issue is no longer before the court. At very little time we explained that we did not waive that issue. We simply said an expert wasn't required if we were to go to trial below. It doesn't mean that we couldn't use an expert. She spent a lot of her argument telling you this wasn't an EHS case. We respectfully submit that that's what they'll do below, and we should be allowed to have it that way. We should be allowed to counter that if they do it. In conclusion, I just would like to say this to the panel. The fact that something is outlawed by law does not mean that a statement that we will give every student the same rights as every other student, and specifically privileges, programs, and activities, is not something that would induce a parent, okay, this school means it, let's go there. That is different and more specific, and it can be relied upon. And I respectfully submit that in the context of what they did over the two years after this claim came to them, and incidentally it came to them by a letter from Dr. Hubbard, certainly if we're down below, if you let us go back with either of the claims, contract or misrepresentation, and we have to show that we asked for a treatment, we should be able to show that letter from a doctor, a serious doctor, saying that this is something that he has and you should treat him. Thank you very much.